UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------

RACHEL ROSE,

    Plaintiff,

vs.

CUYAHOGA COUNTY
DEPARTMENT OF CHILDREN
AND FAMILY SERVICES, *et al.*,

    Defendants.

CASE NO. 1:18-cv-2012

OPINION & ORDER
[Resolving Docs. 23, 24, 25, 27, 31]

------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

This action arises from a state child custody matter involving *pro se* plaintiff Rachel Rose's two minor children. Plaintiff Rose sues the Cuyahoga County Department of Children and Family Services ("Child Services Department"), the Cuyahoga County Public Defender's Office, the Cuyahoga County Prosecutor's Office, and the Cuyahoga County Common Pleas Court, Juvenile Division ("Juvenile Court"). Plaintiff Rose and Defendants have filed cross-motions for judgment on the pleadings.[1]

For the following reasons, the Court **GRANTS** Defendants' motion for judgment on the pleadings and **DENIES** Plaintiff's motion for judgment on the pleadings.

## I. Background

Plaintiff Rose seeks damages and equitable relief for Defendants' allegedly unlawful deprivation of Plaintiff's two minor children. Although a Juvenile Court determined that Plaintiff's children were neglected, Plaintiff says that she complied with the terms of her

---

[1] Defendants move for judgment on the pleadings. Docs. 24, 28. Plaintiff opposes. Doc. 26. Additionally, Plaintiff moves for judgment on the pleadings. Docs. 23, 27. Defendants oppose. Doc. 30.

Case No. 1:18-cv-2012
Gwin, J.

case plan to regain legal custody of her children in June 2018.

The Child Services Department first contacted Plaintiff in March 2017. Soon after, Plaintiff failed a mandatory drug test.

The Child Services Department filed a complaint with the Juvenile Court alleging that Plaintiff's son and daughter were neglected due to Plaintiff's drug use and poor parenting.[2] On June 14, 2017, after at least two hearings, the Juvenile Court ordered that Plaintiff's son and daughter temporarily be placed elsewhere pending the resolution of custody issues.[3] The Child Services Department took Plaintiff's daughter and Plaintiff's son's biological father took Plaintiff's son.

In August 2017, Plaintiff stipulated to the allegations in the Child Services Department's complaint against her.[4] Plaintiff admitted to a drug conviction, that she did drugs while her children slept, and that her substance abuse might impact her ability to provide parental care. The Juvenile Court determined that the children were neglected.[5]

Around the same time, Plaintiff agreed to a new case plan with the Juvenile Court that would allow Plaintiff to regain legal custody of her children if she remained sober for six months.

Initially, Plaintiff was unable to stay sober. But Plaintiff eventually started a lasting period of sobriety on December 3, 2017, and she remains sober today.

In the present lawsuit, Plaintiff alleges that she was injured because the Child Services Department did not immediately give her children back at the six-month mark of

---

[2] Doc. 22-2.
[3] Doc. 22-3.
[4] Doc. 22-2.
[5] Doc. 22-2.

Case No. 1:18-cv-2012
Gwin, J.

her sobriety, in June 2018. Plaintiff received her daughter's legal custody in February 2019. Plaintiff says her son was permanently taken from her in March 2018, but the court documents indicate that Plaintiff entered into a court-approved agreement with the child's biological father on June 28, 2018.[6] The agreement gave the father legal custody of the boy and designated Plaintiff as the non-custodial and non-residential parent.

Plaintiff vaguely alleges a conspiracy among the Defendants to deprive Plaintiff of her children. Plaintiff mostly complains that the Juvenile Court wrongly refused to give Plaintiff her daughter's custody because it relied upon a hair sample showing continued levels of illegal drugs. Plaintiff says drug traces can sometimes stay in a person's hair follicles for up to a year and that assessing detailed drug levels in hair follicles over time is the only reliable way to evaluate whether there is new drug use.

Plaintiff's primary allegations focus on allegedly false affidavit statements from Plaintiff's caseworker, Michelle Shears, and the suppression of a detailed drug report that, for a period, prevented Plaintiff from proving that she had not recently done drugs.

Plaintiff says that caseworker Shears committed perjury by stating in the April 19, 2018 affidavit that Plaintiff "has participated in several drug treatment programs ... [but] has failed to complete or benefit from treatment."[7] The Child Services Department used the affidavit to support its May 3, 2018 motion seeking permanent custody of Plaintiff's daughter. However, the Juvenile Court never decided the motion for the permanent custody; the Child Services Department withdrew it on November 9, 2018.[8]

---

[6] Doc. 17-12.
[7] Doc. 17-1.
[8] Doc. 22-7.

Plaintiff claims that some of her hair follicle samples incorrectly tested positive for drugs, and that Plaintiff had difficulty obtaining the detailed drug report from Cuyahoga County's drug-testing vendor to prove that she had not done drugs since December 3, 2017.[9] In February 2019, when the Juvenile Court awarded legal custody of Plaintiff's daughter to Plaintiff, the Juvenile Court found that Plaintiff had been sober since December 3, 2017.

Plaintiff brings six claims against Defendants. Five are 42 U.S.C. § 1983 claims based on perjury, suppression of evidence (*Brady v. Maryland*), chain of custody, prosecutorial misconduct, and abuse of process. Plaintiff also makes a claim under 18 U.S.C. § 241, a criminal cause of action. In addition to seeking custody of her son, Plaintiff asks for $100,000,000 in damages against Defendants and an order barring the Child Services Department from any further involvement in Plaintiff and her children's lives.

Plaintiff and Defendants both move for judgment on the pleadings.

## II. Legal Standard

The standard for considering a Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings is the same as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim.[10] "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."[11]

---

[9] Despite some of Plaintiff's hair follicle samples testing positive for drugs, Plaintiff's urine samples had tested negative for drug use since December 3, 2017.

[10] *See* Tucker v. Middleburg–Legacy Place, 539 F.3d 545, 549 (6th Cir. 2008).

[11] JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581 (6th Cir. 2007). When opposing parties both move for judgment on the pleadings, the Court treats each side's motion as if the other motion had not been made when considering whether the pleadings present any material issue of fact. *See, e.g.,* Chagnon v. Town of Shrewsbury, 901 F. Supp. 32, 35 (D. Mass. 1995) (citing Wright & Miller, Federal Practice and Procedure: Civil 2d § 1370 (1990)).

Case No. 1:18-cv-2012
Gwin, J.

In particular, for a plaintiff to survive a Rule 12(c) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[12] Federal courts must construe *pro se* complaints liberally.[13] But this rule has its limits. Courts are not required "to conjure allegations on a litigant's behalf."[14]

In deciding a Rule 12(c) motion, courts may consider, *inter alia*, public records; any documents attached to the pleadings; and documents attached to the Rule 12(c) motion that are referred to in the complaint and are central to the plaintiff's claims.[15]

### III. Discussion

Both Plaintiff and Defendants moved for judgment on the pleadings. The Court does not analyze Plaintiff's motion in detail here because, upon close review of her motion, it is clear that Plaintiff has not shown that she is entitled to judgment as a matter of law. Plaintiff does not state the basic elements of her six claims, let alone explain how she satisfies every element. Thus, the Court denies Plaintiff's motion.

The Court now considers Defendants' motion for judgment on the pleadings.

### A. Whether Defendants May Be Sued

Defendants first argue that the Court should dismiss the action because the named defendants are not *sui juris*—in other words, they are not legal entities that can sue or be sued.

The Court agrees that under Ohio law the Child Services Department, Prosecutor's

---

[12] *Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).
[13] *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011).
[14] *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001) (citations omitted).
[15] *See* Fed. R. Civ. P. 10 ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir.2003); *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016).

Case No. 1:18-cv-2012
Gwin, J.

Office, and Juvenile Court are not legal entities capable of being sued.[16]

It is less clear whether the Public Defender's Office is *sui juris* under Ohio law. The Court need not decide this question because in any event Plaintiff fails to state a facially plausible claim against the Public Defender's Office. Plaintiff's complaint vaguely suggests that Plaintiff's public defender was part of the conspiracy to deprive Plaintiff of her children.[17] Even construing the complaint liberally, Plaintiff's allegations against the Public Defender's Office are not enough to state a claim.

Because the Child Services Department and the Prosecutor's Office are subunits of Cuyahoga County, the Court construes the claims asserted against them as claims against Cuyahoga County.[18] Thus, Plaintiff's only remaining claims are against Cuyahoga County.

**B. Plaintiff Does Not State a Claim for Relief Against Cuyahoga County**

Defendants next argue that the *Rooker-Feldman* doctrine bars the Court from considering Plaintiff's claims. The Court need not decide this question because, even if the Court had subject-matter jurisdiction, Plaintiff's complaint does not state a claim for relief against Cuyahoga County.

Five of Plaintiff's claims against the municipality are § 1983 claims. Yet Plaintiff

---

[16] *Moore v. Cuyahoga Cty.*, No. 1:16 CV 3068, 2017 WL 9486440, at *2–3 (N.D. Ohio July 27, 2017) (Cuyahoga County Court of Common Pleas is not *sui juris*), *report and recommendation adopted,* No. 1:16 CV 3068, 2017 WL 4155365 (N.D. Ohio Sept. 19, 2017); *Loper v. Cuyahoga Cty. Children & Family Servs.*, No. 1:18 CV 1598, 2019 WL 1597552, at *2 (N.D. Ohio Apr. 15, 2019) (Cuyahoga County Department of Children and Family Services is not *sui juris*); *Lenard v. City of Cleveland*, No. 1:17 CV 440, 2017 WL 2832903, at *2 (N.D. Ohio June 30, 2017) (Cuyahoga County Prosecutor's Office is not *sui juris*).

[17] Plaintiff alleges that the public defender filed a motion to withdraw and appoint new counsel due to a conflict once Plaintiff filed this federal suit; that the public defender was aware of Plaintiff's misrepresentations in case worker Michelle Shears' affidavit; and that the public defender was working with the prosecution because the defender gave the prosecutor her probation officer letters—evidence that Plaintiff alleges throughout were *favorable* to her case because they showed Plaintiff's urine samples tested negative for drugs.

[18] *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County Jail is not a legal entity susceptible to suit. Because the McCracken County Jail is a department of the county, the county is the appropriate party to address Watson's suit." (citation omitted)).

Case No. 1:18-cv-2012
Gwin, J.

does not allege any custom or policy was the moving force behind the alleged violations of her constitutional rights—a crucial element of a § 1983 claim against a municipality.[19]

Plaintiff's sixth claim based on 18 U.S.C. § 241 also fails to state a claim for relief. This is a criminal cause of action that Plaintiff, as a civil litigant, does not have authority to bring.[20] Accordingly, the Court also dismisses Plaintiff's complaint because Plaintiff does not state a claim for relief.

### C. Plaintiff's Motions to Strike

Plaintiff moved to strike Defendants' motion and opposition brief because Defendant did not include an affidavit with its motion.[21] Plaintiff relies on the federal criminal rules and federal appellate rules for this requirement—neither of which apply to these civil district court proceedings. Accordingly, the Court **DENIES** Plaintiff's motions to strike.

### Conclusion

For the reasons stated, the Court **GRANTS** Defendants' motion for judgment on the pleadings and **DENIES** Plaintiff's motion for judgment on the pleadings. The Court **DENIES** Plaintiff's motions to strike.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this

---

[19] *See, e.g.*, *Smith v. City of Troy, Ohio*, 874 F.3d 938, 946 (6th Cir. 2017). In her briefing, Plaintiff relies heavily upon the Ninth Circuit's decision in *Harwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017). In *Hardwick*, the court found that the individual social worker defendants were not entitled to qualified immunity because there was a clearly established due process right to be free from deliberately fabricated evidence in civil child dependency proceedings involving a parent or child's protected familial liberty interest. While *Harwick* might help support an argument that Plaintiff suffered a constitutional violation, it does not change the fact that Plaintiff does not allege a custom or policy was the moving force behind the alleged constitutional violation. This is required to state a claim against a municipality.

[20] *E.g.*, *Bryant v. Donnell*, 239 F. Supp. 681, 685 (W.D. Tenn. 1965) ("We do not believe that these criminal conspiracy statutes can be construed to create a civil cause of action." (citing 18 U.S.C. § 241)).

[21] Docs. 25, 31. Defendants oppose. Doc. 32.

decision could not be taken in good faith.

    IT IS SO ORDERED.

Dated: May 8, 2019            *s/     James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE